IRVING, J.,
for the Court:
¶ 1. Kimberly Wolfe and Craig Wolfe wed after meeting at Keesler Air Force Base in Mississippi. In May 2008, while living in Ohio, Kimberly and Craig filed a dissolution to begin the process of ending their marriage. As part of that dissolution, the Fairfield County Common Pleas Court Domestic Relations Division in Ohio entered an order restraining both Kimberly and Craig from interfering with each other’s lives. In July 2008, Kimberly moved to Mississippi; Craig followed in October. While in Mississippi, events allegedly occurred that caused Kimberly to file a petition in the Pearl River County Chancery Court for a restraining order. The chancellor found merit to Kimberly’s petition and entered a domestic-violence protective order against Craig. Displeased at the entry of the protective order, Craig appeals and asserts multiple contentions of error, which we consider as two issues: (1) whether the chancellor erred in entering a protective order in Mississippi and (2) whether the chancellor had the authority to enforce the Ohio restraining order.
¶ 2. We find that there was insufficient evidence to justify a protective order; therefore, we reverse and render the judgment of the chancery court.
FACTS
¶3. After Kimberly and Craig were married, Craig; an officer in the United States Air Force, went to serve in Iraq. At the time of his departure, Craig and Kimberly, then pregnant with their first child, Nathanael, were living in Alaska, where Craig had been stationed. By the time that Craig returned to Alaska, it was clear that relations between him and Kimberly had become strained. In October 2007, after Craig’s return from Iraq, he and Kimberly moved to Ohio.
¶ 4. According to Kimberly, Craig raped her in April 2008.[1] Craig maintains that the sexual contact was consensual. The chancellor made no determination as to whether the incident was consensual, and there is no indication in the record that any official proceeding has taken place regarding the alleged rape. Kimberly became pregnant as a result of the' encounter. In May 2008, Kimberly and Craig stopped living together.[2] Around the same time, Kimberly convinced Craig to agree to a dissolution of their marriage; shortly thereafter, Craig learned that Kimberly was pregnant. A later paternity test, performed at Craig’s request, determined that the unborn child was Craig’s. Craig then obtained a restraining order in Ohio to prevent Kimberly from having an abortion.
¶ 5. As stated, in July 2008, Kimberly moved to Mississippi. Under the terms of the Ohio visitation order, Craig must remain within sixty miles of Kimberly in order to exercise full visitation. Craig tes *652 tified that he followed Kimberly to Mississippi as a result. However, the visitation order pertains only to Nathanael. The Wolfes’ second child, Benjamin, was born in 2009 and has never had contact with his father because Kimberly refuses to allow Craig to have visitation with Benjamin without a court order.
¶ 6. Kimberly and Craig’s relationship did not improve upon their arrival in Mississippi. Craig testified that Kimberly told him that, under Mississippi law, he had to meet her at the police station to take Nathanael for visitation. Craig testified that he later learned that there was no requirement that he meet Kimberly at the police station for visitation. Kimberly' testified that Craig then demanded that they meet at a Wendy’s or a McDonald’s, and that if they did not, Craig would not bring Nathanael back at the end of his visitation period. While meeting at the police station to exchange Nathanael, there was an incident that involved Craig touching Kimberly’s stomach while she was pregnant with Benjamin; Craig testified that he did so with Kimberly’s permission, while Kimberly testified that Craig rubbed her stomach without permission. Kimberly also complained of an incident at the police station where Craig allegedly “pinned” her between her open car door and her car and rubbed her stomach. Kimberly testified that she is afraid of Craig in part because he wants visitation with Benjamin, although Kimberly admitted that Craig has had visitation with Nathanael for ten months without incident.
¶ 7. On April 20, 2009, the chancery court entered a domestic-violence protective order against Craig. In addition to prohibiting Craig from contacting Kimberly, the chancellor incarcerated Craig for ninety days. The next day, the chancery court entered an order releasing Craig and suspending his ninety-day sentence “on the condition that Craig E. Wolfe return to Ohio immediately.” On April 30, Craig filed a motion to set aside or reconsider the protective order. A hearing on the motion was held on May 7, 2009, and the chancery court issued a final protective order on the same day. As justification for the order, the chancery court found that Craig: (1) had “attempted to cause or intentionally, knowingly[,] or recklessly caused bodily injury” to Kimberly; (2) had placed Kimberly in fear of “imminent serious bodily injury”; and (3) had engaged in stalking or cyberstalking. The chancery court gave the following factual basis for these findings: “On 4/24/2008 there was a[n] alleged unconsentual [sic] sex with petitioner by respondent; in 12/08 he threatened not to return the minor child; he has violated the 7/30/08 Ohio mutual restraining order, attached hereto as an exhibit.”
¶ 8. Additional facts,' as necessary, will be related during our analysis and discussion of the issues.
ANALYSIS AND DISCUSSION OF THE ISSUES

1.. Validity of Mississippi Order

¶ 9. In order to obtain a restraining order in Mississippi, an individual “may seek a domestic abuse protection order ... by filing a petition alleging abuse by the respondent.” Miss.Code Ann. § 93-21-7(1) (Rev.2004). The Mississippi Code contains a specific definition of what constitutes “abuse”:
“Abuse” means the occurrence of one or more of the following acts between spouses, former spouses, persons living as spouses or who formerly lived as spouses, persons having a child or children in common, other individuals related by consanguinity or affinity who reside together or who formerly resided *653 together!,] or between individuals who have a current or former dating relationship:
(i) Attempting to cause or intentionally, knowingly or recklessly causing bodily injury or serious bodily injury with or without a deadly weapon;
(ii) Placing, by physical menace or threat, another in fear of imminent serious bodily injury;
(iii) Criminal sexual conduct committed against a minor within the meaning of Section 97-5-23;
(iv) Stalking within the meaning of Section 97-3-107;
(v) Cyberstalking within the meaning of Section 97-45-15; or
(vi) Sexual offenses within the meaning of Section 97-3-65 or 97-3-95.
Miss.Code Ann. § 93-21-3(a) (Supp.2009).
¶ 10. When all of the events testified to by Kimberly are reviewed, it is clear that there was insufficient evidence for a protective order. Kimberly essentially testified that: (1) Craig had touched her stomach when she did not want him to, (2) Craig had made her feel “pinned” near her car, and (3) Craig had threatened to keep custody of Nathanael. None of these events involved Craig causing Kimberly any form of bodily injury, nor did they constitute criminal sexual conduct. Furthermore, none of the incidents related by Kimberly constitute stalking or cyberstalk-ing. Kimberly never testified that she feared “imminent serious bodily injury.” Although Kimberly testified to an alleged sexual assault by Craig in Ohio, the chancellor apparently did not find Kimberly credible as to the assault, as he specifically declined to find that Kimberly had shown evidence of sexual battery or rape. Therefore, there was no ground to issue the protective order under Mississippi law.
¶ 11. Consequently, we reverse and render the chancery court’s entry of a Mississippi protective order.

2. Enforcement of Ohio Order

¶ 12. Although not specifically addressed as such by the chancery court, we find it necessary to consider whether the chancery court’s judgment can be affirmed as an enforcement of the Ohio order. It is clear that Kimberly’s testimony would be sufficient to show a violation of the Ohio order, which prohibited the Wolfes from bothering, harassing, annoying, and interfering with one another.
¶ 13. However, enforcement of the Ohio protective order would require a finding that Craig is in contempt of the Ohio order. Under Rule 81 of the Mississippi Rules of Civil Procedure, strict notice requirements must be adhered to in order to initiate a contempt proceeding. Those notice requirements were not complied with in this case; therefore, the chancery court lacked jurisdiction to enforce the Ohio protective order. As a result, the Ohio protective order cannot be used to affirm the chancery court’s judgment.
¶ 14. For the reasons discussed, we reverse and render the judgment of the chancery court.
¶ 15. THE JUDGMENT OF THE CHANCERY COURT OF PEARL RIVER COUNTY IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE AP-PELLEE.
KING, C.J., LEE AND MYERS, P.JJ., GRIFFIS, ISHEE, ROBERTS AND MAXWELL, JJ„ CONCUR. CARLTON, J„ DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY BARNES, J.

. Kimberly testified that she and Craig ceased having consensual sex on February 14, 2009. However, it is clear from the totality of her testimony that she meant February 14, 2008.

. Kimberly also testified that she moved out July 4, 2008. Although it is not clear from the record what Kimberly meant when she said she moved-out July 4, perhaps, in light of her other testimony that she and Craig stopped living together in May, she meant that this was the date that she left Ohio and came to Mississippi.